**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TAMIKO SMITH-JORDAN** | **CIVIL ACTION** |
| **VERSUS** | **NO: 19-14699** |
| **LEPAUL LOVE ET AL.** | **SECTION: "H"(1)** |

**ORDER AND REASONS**

Before the Court are Defendant RPM Pizza, LLC's Motions in Limine (Docs. 76, 77, 78, 79, 82, 86, 87, and 92), Motion for Reconsideration (Doc. 122), and Plaintiff's Omnibus Motion in Limine (Doc. 96). The Motions are resolved as outlined below.

**BACKGROUND**

Plaintiff Tamiko Smith-Jordan originally filed this action in Orleans Parish Civil District Court against LePaul Love and RPM Pizza, LLC ("RPM") for injuries she alleges she sustained in an automobile accident. Defendant RPM removed the action to this Court on the basis of diversity jurisdiction.

RPM has stipulated that Love was in the course and scope of his employment with RPM as a pizza delivery driver at the time of the accident. Plaintiff alleges that Love was negligent in causing the accident, or in the

alternative, that RPM was negligent in entrusting Love to operate a vehicle. A jury trial of this matter is set for April 18, 2022,[1] and the parties have filed several motions seeking to limit and exclude certain evidence from trial. The Court will consider each motion in turn.

## LAW AND ANALYSIS

### I. Defendant RPM's Motion in Limine to Exclude Evidence and Argument Regarding Plaintiff's Negligent Entrustment Claim (Doc. 86)

Defendant RPM moves for an order prohibiting Plaintiff from introducing evidence and argument relating to her alternative claim that RPM negligently entrusted Defendant Love to operate a company vehicle as a pizza delivery driver. Specifically, Defendant argues that because it has stipulated that Love was in the course and scope of his employment with Defendant at the time of the accident and that it is vicariously liable for his negligence, Plaintiff cannot maintain a claim for direct negligence against Defendant. It argues that any evidence or argument relating to a negligent entrustment claim against Defendant is therefore irrelevant and prejudicial.

There is no binding precedent under Louisiana law controlling this issue.[2] "If there is no ruling by the state's highest court on the specific question, the Court must make an *Erie* guess as to how the state's highest court would decide the issue."[3] Several courts, including this one, have recently engaged in

[1] Trial of this matter has been delayed several times in light of the COVID-19 pandemic.

[2] Wright v. Nat'l Interstate Ins. Co., No. CV 16-16214, 2017 WL 5157537, at *2 (E.D. La. Nov. 7, 2017).

[3] Thomas v. Chambers, No. CV 18-4373, 2019 WL 1670745, at *6 (E.D. La. Apr. 17, 2019).

making an *Erie* guess on this issue and have sided with Defendant.[4] Indeed, "[s]ections of this Court and other federal district courts in Louisiana have uniformly held that, when an employer is indisputably vicariously liable for the negligent acts of its employee, the plaintiff cannot also maintain a direct negligence claim against the employer."[5]

In *Thomas v. Chambers*, the plaintiff was injured in a car accident involving a tractor-trailer operated by Randall Chambers, an employee of God's Way Trucking, LLC ("God's Way").[6] Plaintiff brought claims against Chambers for his negligence and against God's Way for vicarious liability and its independent negligence for negligently hiring, training, supervising, and entrusting Chambers.[7] The court held "that plaintiffs may not maintain both a direct negligence claim against God's Way and a claim that God's Way is vicariously liable for Chambers's negligence, because God's Way readily admits that it is vicariously liable for Chambers's alleged negligence."[8] In so holding, the court made an *Erie* guess in reliance on the Louisiana Third Circuit Court of Appeal's decision in *Libersat v. J & K Trucking, Inc.*[9] In *Libersat*, the appellate court held that the district court did not err in failing to instruct the jury on the employer's duty regarding hiring and training when it "equated

---

[4] *Id.*; *Wright*, 2017 WL 5157537, at *2; Dennis v. Collins, No. CV 15-2410, 2016 WL 6637973, at *8 (W.D. La. Nov. 9, 2016); Coffey v. Knight Refrigerated, LLC, No. CV 19-3981, 2019 WL 5684258, at *3 (E.D. La. Nov. 1, 2019); Franco v. Mabe Trucking Co., Inc., No. 17-871, 2018 WL 6072016, at *4 (W.D. La. Nov. 20, 2018); Vaughn v. Taylor, No. 18-1447, 2019 WL 171697, at *3 (W.D. La. Jan. 10, 2019); Wilcox v. Harco Int'l Ins., No. CV 16-187-SDD-EWD, 2017 WL 2772088, at *3 (M.D. La. June 26, 2017).

[5] Pigott v. Heath, No. CV 18-9438, 2020 WL 564958, at *3 (E.D. La. Feb. 5, 2020) (cases cited therein).

[6] *Thomas*, 2019 WL 1670745, at *1.

[7] *Id.*

[8] *Id.* at *7.

[9] 772 So. 2d 173 (La. App. 3 Cir. 2000).

*respondeat superior* to all possible theories of recovery."[10] The court explained that:

> If Mr. Mitchell [the employee] breached a duty to the Appellants, then Patterson [his employer] is liable under the theory of respondeat superior. If Mitchell did not breach a duty to the Appellants then no degree of negligence on the part of Patterson in hiring Mitchell would make Patterson liable to the Appellants.[11]

The same is true here. If the jury finds that Love was not negligent in causing the accident at issue, then no amount of alleged negligence on RPM's part in entrusting him to operate a vehicle would make RPM liable to Plaintiff. Plaintiff does not point this Court to any case reaching a contrary conclusion. Accordingly, the Motion is **GRANTED**, and no evidence concerning Plaintiff's claim of negligent entrustment shall be admissible at trial.

## II. Defendant RPM's Motion in Limine to Exclude Evidence Related to Citation, Prior Accidents, and Accident Report (Doc. 76)

Defendant RPM argues that the traffic citation issued to Love after the accident is inadmissible because *nolle prosequi* was entered. Plaintiff concedes that the traffic citation is inadmissible. Accordingly, this Motion is **GRANTED**.

Next, Defendant argues that Love's prior accident and traffic citation history should be excluded as irrelevant, prejudicial, and improper character evidence. Plaintiff argues that the information is relevant to his claim of negligent entrustment. For the reasons discussed above, this Motion is **GRANTED**.

---

[10] *Id.* at 179.
[11] *Id.*

Finally, Defendant asks this Court to exclude the police report prepared by the officer on the scene of the accident as hearsay and improper lay testimony. This Court agrees that the responding officer's comments as to fault and causation are inadmissible opinion testimony and that much of his report contains hearsay in the form of witness statements at the scene.[12] That said, the Court will allow the responding officer to testify as to what he saw at the scene of the accident and will allow admission of those first-hand observations incorporated into his report.[13] Provided the diagram prepared in his report reflects his personal observations, it is also admissible. Accordingly, this request is **GRANTED IN PART**.

## III. Defendant RPM's Motion in Limine to Exclude Plaintiff's Exhibits 6 and 7 and Witnesses 2 and 4 (Doc. 77)

Defendant RPM next moves to exclude information relating to the hiring, training, and suspension of Love. Specifically, Defendant moves to exclude Exhibit 6, which consists of Love's employment file, documents related to his suspension, and proof of training classes that Defendant required Love to take after this accident; Exhibit 7, which contains documents produced by Defendant and its response to a 30(b)(6) corporate deposition; Love's testimony regarding his training, suspension, and subsequent training after this

---

[12] Duhon v. Marceaux, 33 F. App'x 703 (5th Cir. 2002) ("As a general rule, police officers' lay 'opinions as to the cause of an automobile accident formed by viewing subsequent evidence at the scene' are excluded under Rule 701."). The Court notes, however, that some witness statements may be admissible under other hearsay exceptions, such as admissions by a party-opponent pursuant to Federal Rule of Evidence 801.

[13] Robert v. Maurice, No. CV 18-11632, 2020 WL 4043097, at *5 (E.D. La. July 17, 2020) ("Courts have recognized that first-hand observations of a police officer, which are based on the officer's investigation and experience, are also admissible.").

accident; and the testimony of Defendant's 30(b)(6) representative regarding hiring, training, and Love's employment and suspension. Defendant argues that this information is irrelevant where no claim for negligent hiring or training has been brought and it has stipulated that Mr. Love was in the course and scope of his employment with Defendant at the time of the accident. This Court agrees. To the extent that remedial measures could be admissible for the limited purposes outlined under Federal Rule of Evidence 407, Plaintiff may approach the bench before introducing such evidence. Accordingly, the Motion is **GRANTED**.

## IV. Defendant RPM's Motion in Limine to Exclude Evidence Regarding RPM's Size, Training Programs, or Employment Policies (Doc. 78)

Here again, Defendant RPM moves to exclude evidence regarding its size, training programs, or employment policies as irrelevant in light of Defendant's stipulation that Love was acting in the course and scope of his employment at the time of the accident and because Plaintiff did not raise a claim of negligent training, hiring, or supervising against Defendant. This Court agrees, and the Motion is **GRANTED**.

## V. Defendant RPM's Motion in Limine to Exclude Evidence About Whether Defendant's Lifecare Planner Spoke Directly to Plaintiff or to Her Treating Physicians (Doc. 79)

Next, Defendant RPM moves to exclude any evidence or argument relating to its expert lifecare planner's failure to speak directly to Plaintiff or her treating physicians because she is barred from doing so under Louisiana's physician–patient privilege laws. Plaintiff did not oppose this Motion. Accordingly, the Motion is **GRANTED**.

## VI. Defendant RPM's Motion in Limine to Exclude Certain Witnesses and Exhibits That Were Not Timely Disclosed or Produced During Discovery of this Matter or in Accordance with the Court's Scheduling Order (Doc. 92)

Defendant RPM next moves to exclude certain witnesses and exhibits that were not timely disclosed or produced by Plaintiff. Specifically, Defendant identifies three witnesses, four exhibits, and three demonstratives that were not disclosed to it until September 30, 2021, when Plaintiff sent her inserts for the pre-trial order that the parties prepared in this matter. The discovery deadline in this matter was September 20, 2021. Defendant alleges that these witnesses and exhibits did not appear in Plaintiff's initial disclosures, discovery responses, or witness and exhibit lists.

In fact, Plaintiff identified general categories of witnesses and exhibits in her initial witness and exhibit lists that encapsulate the contested items. For instance, Defendant contests Plaintiff's late identification of Audrey Williams, Plaintiff's mother, as a witness, but Plaintiff's witness list identified "[f]amily and/or friends" of Plaintiff. Similarly, Defendant contests the late identification of Robin Roser, Plaintiff's physical therapist, but Plaintiff identified "any and all medical providers" on her witness list. Finally, Defendant disputes the late identification of certain medical bills and a medical billing summary, but Plaintiff identified "any and all certified medical records and bills" and "medical bill summary" on her exhibit list. While far from ideal in their specificity, this Court finds that Plaintiff's witness and exhibit lists were sufficient to put Defendant on notice, and Defendant is not prejudiced.

Further, the deadline to exchange demonstratives had not yet passed as of the filing of this Motion. This Court requires demonstrative exhibits for use during opening statements to be exchanged shortly before trial.[14] Introduction of all other demonstratives will be handled during trial. Accordingly, this Motion is **DENIED**.

## VII. Defendant RPM's Motion for Reconsideration (Doc. 122)

On October 5, 2021, Defendant RPM filed a Motion in Limine to Exclude Untimely Disclosed Non-Rebuttal Expert Reports.[15] Later that day, counsel for Plaintiff represented at a pre-trial conference with the Court that it would be withdrawing these reports. As a result of that representation, the Court denied Defendant's Motion as moot.[16] Since that time, Plaintiff has indicated that she will in fact seek to offer the opinions at issue in Defendant's prior Motion. Accordingly, Defendant has reurged its Motion and asked this Court to reconsider its denial.

Plaintiff initially retained Dr. Lacy Sapp to serve as her lifecare planning expert in this matter, and Dr. Sapp prepared a report and opinion. After Dr. Sapp suffered a medical emergency, Plaintiff notified Defendant of her intention to substitute Dr. Aaron Wolfson in her place. Defendant agreed on the condition that no new opinions would be rendered. Despite this, Dr. Wolfson drafted a new expert report and issued new opinions after the expert report deadline. Plaintiff argues that the new report issued by Dr. Wolfson was rebuttal in nature. Defendant asks this Court either to exclude Dr. Wolfson's new opinions and limit him to the report initially issued by Dr. Sapp or exclude

---

[14] *See* Doc. 113.
[15] Doc. 107.
[16] Doc. 113.

both reports entirely in light of Defendant's bad faith discovery tactics. It also asks for sanctions under Rule 37(c)(1). Further, Defendant seeks to exclude a new report issued after the expert report deadline by Plaintiff's accounting expert, Mr. Litolff, in which he utilized Dr. Wolfson's new opinions.

The Court does not agree with Plaintiff that Dr. Wolfson's new report is entirely rebuttal in nature. Dr. Wolfson admitted to reviewing new records that Dr. Sapp had not reviewed and conducting additional research to add additional costs to the plan. These additions were not in response or rebuttal to the opinion issued by Defendant's expert. Indeed, Dr. Wolfson's report adds more than $100,000 in new treatment and recommendations not previously included. This supplemental report was untimely. That said, Defendant admits that some of Dr. Wolfson's report is rebuttal in nature and does respond to its expert's report. Accordingly, Dr. Wolfson is limited to the report issued by Dr. Sapp and any opinions that were issued in response to Defendant's expert. Further, Mr. Litolff's new report was entirely supplemental. He simply updated his ultimate conclusions based on the higher amounts calculated by Dr. Wolfson. Accordingly, Mr. Litolff is limited to the report he issued based on the calculations of Dr. Sapp. This Court finds this ruling to be a more appropriate resolution than striking Plaintiff's experts entirely. Further, the Court does not find sanctions appropriate. Accordingly, Defendant's Motion is **GRANTED IN PART**.

## VIII. Defendant RPM's Motions in Limine to Exclude Crescent View Surgery Center Medical Specials (Doc. 87) and Dr. Suneil Jolly's Medical Specials (Doc. 82) and Portions of Plaintiff's Omnibus Motion in Limine (Doc. 96)

In this section, the Court will address several related issues raised in three pending motions. Each of these motions relates to the medical billing by Dr. Suneil Jolly, Louisiana Pain Specialists ("LPS"), and Crescent View Surgery Center ("CVSC"). Defendant argues that the billing scheme between these medical providers is improper and violates Louisiana law. It asks this Court to preclude Plaintiff from introducing any medical specials incurred through Jolly, LPS, or CVSC. Relatedly, Plaintiff asks the Court to exclude (1) evidence regarding how Plaintiff's medical expenses were paid or guaranteed by third-party funding companies or Plaintiff's attorneys; (2) evidence regarding referral of Plaintiff to specific doctors by Plaintiff's attorneys; and (3) testimony from Defendant's expert in medical bill auditing regarding the past value of the medical treatment provided to Plaintiff.

To address these motions, the Court will first explain the medical billing arrangement at issue. Plaintiff's counsel reached out to Medical CSM Services, LLC ("CSM") on behalf of Plaintiff to request that she be seen by a pain management physician. CSM coordinates the treatment of plaintiffs in litigation with physicians who will accept payment from third-party funding company Southern Magnolia Medical ("SMM"). CSM connected Plaintiff with Dr. Jolly. Dr. Jolly is the sole owner of LPS and a partial owner at CVSC, the facility where many of Plaintiff's procedures were performed. Throughout the course of his treatment of Plaintiff, Dr. Jolly performed four procedures on Plaintiff at CVSC. CVSC charged a total of $292,100 for the facility's use and

anesthesia for those procedures. However, this bill was issued to LPS, not to Plaintiff. LPS paid just a fraction of those bills—$11,840—in full satisfaction. LPS then rebilled the full $292,100 plus Dr. Jolly's professional fee to SMM. SMM then paid a fraction of the facility fee—$86,750—to LPS in full satisfaction. SMM now seeks the entire $292,100 in facility fees from Plaintiff and this litigation.

Defendant argues that LPS had no right to charge the full facility fee to SMM when it did not earn that fee and the fee was fully satisfied by its payment to CVSC. It argues that this arrangement is in violation of Louisiana's laws prohibiting the receipt of payments for referring or soliciting patients.[17] Defendant argues that the medical provider's scheme was created to "artificially increase litigation costs and allow physicians to profit off the litigation system using improper referral fees" and therefore the charges should not be owed by any party.[18] It also points out that Plaintiff's lifecare planning expert used the inflated rates charged by LPS in calculating the cost of Plaintiff's future care.

Plaintiff rebuts that Defendant has insufficient evidence of any fraudulent billing to warrant exclusion of the medical bills. Plaintiff also points out that she owes the full amount billed by SMM, who purchased LPS's accounts receivable and assumed the risk of collecting those amounts in this litigation. Plaintiff emphasizes that she does not benefit from and is not involved in the arrangement between CMS, CVSC, LPS, and SMM. As a result, Plaintiff asks this Court to exclude (1) evidence regarding how Plaintiff's

[17] *See* LA. REV. STAT. § 37:1744 et seq.
[18] Doc. 82.

medical expenses were paid or guaranteed by third-party funding companies or Plaintiff's attorneys; (2) evidence regarding referral of Plaintiff to specific doctors by Plaintiff's attorneys; and (3) testimony from Defendant's experts in medical bill auditing regarding the past value of the medical treatment provided to Plaintiff.

Other sections of this Court have considered these issues, and this Court finds their analyses compelling. In *Thomas v. Chambers*, the court considered the admissibility of evidence regarding payments by third-party companies to the plaintiff's treating physicians.[19] The court held that the defendants could not introduce evidence regarding the financial arrangement at issue in an attempt to limit the plaintiff's recovery on past medical expenses.[20] The court explained that "because plaintiffs have not actually received a benefit from the discount negotiated between the third-party funding companies and the healthcare providers, defendants cannot subtract that discount from a hypothetical damage award to plaintiffs."[21] The court pointed out that Louisiana law requires a tortfeasor to pay the full amount for the medical treatment of his victim unless the treatment was incurred in bad faith.[22] That said, the court found that evidence of the financial arrangement between plaintiff's healthcare providers and the third-party funding company was admissible to impeach the credibility of the plaintiff's treating physicians where the arrangement "could create an incentive for plaintiffs' treating physicians to want plaintiffs to win their case, because a victory could result

[19] Thomas v. Chambers, No. CV 18-4373, 2019 WL 8888169, at *5 (E.D. La. Apr. 26, 2019).

[20] *Id.*

[21] *Id.* at *3.

[22] *Id.*

in more referrals" from the third-party funding company.[23] The court also allowed the defendant's medical bill auditing expert to testify regarding the overcharges to impeach the plaintiff's treating physicians.[24] Likewise, the court in *Robert v. Maurice*, relying on *Thomas*, held that if the plaintiff is allowed to introduce evidence of the full amount charged to her by a third-party funding company, then the financial arrangement between the plaintiff's treating physicians and the third-party funding companies was relevant and admissible to the issues of causation, bias, and credibility.[25]

Here too, the Court finds that Plaintiff owes the full billed amount to SMM, and therefore the billing arrangement between CVSC, LPS, and SMM cannot be used to limit her recovery. That said, this Court agrees that the arrangement may be used to impeach the credibility of Plaintiff's treating physicians. Further, Defendant points out that Dr. Jolly's inflated rates were utilized by Plaintiff's other experts in preparing Plaintiff's lifecare plan and future medical cost estimates. The rule that "requires that the jury award all medical costs actually incurred for medical procedures already performed[] does not apply to future medical expenses."[26] Determination of future medical costs generally turns on "questions of credibility and inferences."[27] Accordingly, the Court finds that evidence of the billing scheme at issue is also admissible as to the determination of future medical costs.

---

[23] *Id.* at *4.

[24] *Id.* at *14; *see also* Collins v. Benton, 470 F. Supp. 3d 596, 605 (E.D. La. 2020).

[25] Robert v. Maurice, No. CV 18-11632, 2020 WL 9074826, at *8 (E.D. La. Sept. 30, 2020).

[26] Abadie v. Target Corp. of Minn., No. CV 18-14112, 2021 WL 5029462, at *4 (E.D. La. June 22, 2021).

[27] *Id.*

For these reasons, Defendant's Motions to prevent Plaintiff from claiming medical specials from Dr. Jolly, LPS, and CVSC are **DENIED**.[28] The portion of Plaintiff's Omnibus Motion in Limine that seeks to exclude evidence regarding how Plaintiff's medical expenses were paid or guaranteed by third-party funding companies or Plaintiff's attorneys is **DENIED**; her request to exclude evidence regarding referral of Plaintiff to specific doctors by Plaintiff's attorneys is **DENIED**; and her request to exclude testimony from Defendant's experts in medical bill auditing regarding the past value of the medical treatment provided to Plaintiff is **GRANTED IN PART**. This testimony will be admissible only to show the reasonableness of future medical costs and to impeach Plaintiff's treating physicians, and the Court will provide a limiting instruction at the appropriate time.

## IX. Remainder of Plaintiff's Omnibus Motion in Limine (Doc. 96)

In her Motion in Limine, Plaintiff raises several additional issues for which she seeks a ruling requiring Defendants to refrain from mentioning or introducing at trial without first approaching the bench and obtaining a ruling outside of the presence of the jury. At the outset, Defendant RPM argues that Plaintiff's Motion is untimely, but in light of the continuance of trial, this Court finds no prejudice in Plaintiff's late filing. Accordingly, the Court will consider each of Plaintiff's arguments in turn.

### a. Attorney-Client Relationship

First, Plaintiff seeks to exclude evidence or argument relating to the circumstances under which Plaintiff employed her attorneys or the fee for their representation. This Court finds the timing of Plaintiff's retention of counsel

[28] Docs. 82, 87.

to be relevant. However, questions regarding her fee arrangement with counsel or any discussions she had with counsel are irrelevant or privileged. Accordingly, this request is **GRANTED IN PART**.

**b. References to Defendant RPM's Size**

Plaintiff next asks that Defendant RPM be prevented from referring to itself as a small, "mom and pop" business. Just as Plaintiff cannot refer to RPM's size as discussed above, Defendant also cannot. Accordingly, this request is **GRANTED**.

**c. Timeliness of Disclosure**

Plaintiff asks this Court to exclude any evidence or argument regarding any document or witness that was not timely identified and disclosed in the discovery process. This Court assumes that both parties will comply with the Federal Rules of Civil Procedure and this Court's scheduling and pre-trial orders. With the exception of impeachment evidence, only exhibits included on the exhibit list in the pre-trial order prepared by the parties shall be included for use at trial.[29] Accordingly, this Motion is **GRANTED**.

**d. Surveillance, Impeachment, and Rebuttal Evidence**

Similarly, Plaintiff contends that Defendants should be prevented from introducing any surveillance, impeachment, or rebuttal evidence that was not disclosed. Again, only exhibits included on the exhibit list shall be included for use at trial.[30] That said, the Court's Pre-Trial Notice also provides that "[i]f a party considers he has good cause not to disclose exhibits to be used solely for the purpose of impeachment, he may ex parte request a conference with the

[29] Doc 32-1.

[30] Doc 32-1.

Court and make his position known to the Court *in camera*."[31] Accordingly, Plaintiff's Motion is **GRANTED** except to the extent that Defendant has requested *in camera* review of evidence solely for impeachment purposes in compliance with the Pre-Trial Notice.

**e. Prior Accidents and Litigation**

Plaintiff moves this Court to exclude evidence of Plaintiff's prior injuries, claims, suits, and settlements as irrelevant. Defendant RPM confirms that it does not intend to introduce or reference any of Plaintiff's prior litigation settlements. However, Defendant does intend to introduce Plaintiff's history of medical ailments, which it argues are the true cause of her current health condition. Indeed, in the past Plaintiff has alleged back and neck pain related to workplace injuries that predate the accident at issue here. The Court finds therefore that evidence of Plaintiff's prior injuries, treatment, and complaints of pain are relevant to the damages claimed here. This Motion is **GRANTED IN PART**.

**f. Accident Impact and Severity**

Plaintiff next asks the Court to exclude evidence regarding the impact of the accident, arguing that this evidence is not probative of the damages sustained by Plaintiff. Defendant RPM rebuts that its accident reconstruction expert can offer an opinion on the likelihood that injuries will result from forces applied to the human body. It argues that such an opinion is relevant to Plaintiff's claim of injury. Indeed, courts have held that "the minimal impact of an automobile accident is a factor, albeit not a determinative one, which may

---

[31] *Id.*

be considered by the jury" in determining causation or the extent of injuries.[32] Accordingly, this Motion is **DENIED**.

**g. Witnesses Not Called**

Plaintiff asks this Court to exclude mention of the possibility of testimony by any person not properly designated. Plaintiff's request does not contain sufficient specificity for this Court to enter a pre-trial ruling. Accordingly, this Motion is **DEFERRED** to be reasserted if necessary at trial.

**h. Reference to Plaintiff's Motion in Limine**

Next, Plaintiff asks the Court to exclude Defendants from making any reference to this Motion or the Court's rulings thereon. This Court agrees that pre-trial motions are not relevant to the issues at trial. Accordingly, the Motion is **GRANTED**.

**i. Body Camera Footage**

Plaintiff asks this Court to exclude body camera video from the scene of the accident at issue in this case as hearsay, cumulative, and prejudicial. Defendant RPM argues, and this Court agrees, that the statements made by Plaintiff in the body camera footage are not hearsay under Federal Rule of Evidence 801(d)(2) as statements offered against an opposing party. Any argument that the footage is cumulative or irrelevant is deferred to trial. Accordingly, Plaintiff's Motion is **DENIED IN PART** and **DEFERRED IN PART**.

---

[32] Fortier v. State Farm Mut. Auto. Ins. Co., No. CIV.A. 99-2136, 2000 WL 1059772, at *1 (E.D. La. July 31, 2000) (and cases cited therein).

**j. Dr. Najeeb Thomas Testimony on Costs**

Plaintiff asks the Court to prevent Defendant RPM's expert, Dr. Najeeb Thomas, from testifying as to the cost of spinal cord stimulators as such testimony is outside the scope of his report. Indeed, Dr. Thomas's report does not include an estimate of the cost of a spinal cord stimulator. All experts are limited to the four corners of their expert report when testifying at trial.[33] Accordingly, this Motion is **GRANTED**.

**k. Dr. J. Monroe Laborde, Dean Tekell, Sarah Malloy, Charles Theriot**

Next, Plaintiff appears to bring *Daubert* motions challenging the methodology of the opinions of Defendant's orthopedic surgery expert, Dr. J. Monroe Laborde; accident reconstruction expert, Dean Tekell; lifecare plan expert, Sarah Malloy; and financing expert, Charles Theriot. The deadline to file *Daubert* motions in this matter was September 8, 2021, and these Motions are therefore not timely filed. Further, the issues raised by Plaintiff are best addressed on cross-examination. That said, the Court cautions that it will not allow cumulative evidence to the extent that these expert opinions overlap. These Motions are **DENIED**.

**l. Settlements**

Plaintiff asks this Court to exclude evidence of settlements reached with other parties to this litigation. The Court agrees such information is irrelevant, and the Motion is **GRANTED**.

---

[33] Beary v. Deese, et al., No. CV 16-15757, 2018 WL 3455544, at *3 (E.D. La. July 17, 2018).

**m. Exhibits**

Finally, Plaintiff lists a number of exhibits to which it objects for various reasons. These issues are best addressed during the course of trial and are therefore **DEFERRED**.

**CONCLUSION**

For the foregoing reasons, the Motions are ruled on as outlined herein.

New Orleans, Louisiana this 25th day of January, 2022.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**